IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **LISA L.[1]**, | Case No. 1:20-cv-494-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **KILOLO KIJAKAZI,** Acting Commissioner of Social Security, | |
| Defendant. | |

Lisa R.J. Porter, JOHNSTON PORTER LAW OFFICE, PC, 5200 SW Meadows Road, Suite 150, Lake Oswego, OR 97035. Of Attorneys for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Summer Stinson, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Lisa L. (Plaintiff) brings this action pursuant to § 405(g) of the Social Security Act (the

Act), *as amended*, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's

application for Disability Insurance Benefits (DIB) under Title II of the Act. For the reasons

below, the Court AFFIRMS the Commissioner's decision.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper

legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see*

*also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means

"more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec.*

*Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039

(9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must

uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a

rational reading of the record, and this Court may not substitute its judgment for that of the

Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th

Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm

simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625,

630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)

(quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a

ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

**BACKGROUND**

**A. Plaintiff's Application**

On March 3, 2017, Plaintiff applied for DIB alleging that her disability began on

November 4, 2016. AR 23. Plaintiff was born on March 23, 1966 and was 50 years old as of the

alleged disability onset date. AR 163. The Commissioner denied Plaintiff's claims on June 12,

2017. AR 79-80. On June 6, 2017, the Commissioner denied Plaintiff's claims on

reconsideration. AR 83-96. Plaintiff requested and testified at a hearing before an Administrative

Law Judge (ALJ) on January 14, 2019. AR 23. The ALJ concluded that Plaintiff was not

disabled and issued a written decision denying Plaintiff's application. AR 20-33. The ALJ's

decision became the final decision of the Commissioner when the Appeals Council denied

Plaintiff's request for review on January 30, 2020. AR 1-3.

**B. The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R.
§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
significant mental or physical duties done or intended to be done for pay
or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
such work, she is not disabled within the meaning of the Act. 20 C.F.R.

§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

See also *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however,

the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54;

*Tackett*, 180 F.3d at 1099.

**C.  The ALJ's Decision**

The ALJ first found that Plaintiff met the insured status requirements of the Act through

June 30, 2020. AR 25. At step one, the ALJ found that Plaintiff had engaged in substantial

gainful activity since the alleged onset date of November 4, 2016 but, because Plaintiff had at

least one 12-month period during which she engaged in no substantial gainful activity, the ALJ

proceeded to step two. AR 25-26. At step two, the ALJ determined that Plaintiff suffered from

the following severe impairments: cervical spine degenerative disc disease status-post fusion;

lumbar spine degenerative disc disease; and a status-post vascular insult to the brain. AR 26. At

step three, the ALJ found that none of Plaintiff's impairments met or equaled the severity of one

of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 72-28. The ALJ then

determined Plaintiff's RFC and found that Plaintiff could perform:

> Light work as defined in 20 C.F.R. [§] 404.1567(b) except she can
> engage in occasional climbing of ramps and stairs, but never
> climbing of ladders, ropes and scaffolds. She can frequently stoop,

kneel, crouch, and crawl. Due to pain and side effects of
medication, she can understand, remember, and carry out only
simple routine and repetitive tasks with only occasional public
contact.

AR 28. At step four, the ALJ found that Plaintiff could not perform her past relevant work as a

data entry clerk or user support analyst. The ALJ found at step five, however, that Plaintiff could

perform other jobs existing in the national economy, including Bottle Line Attendant, Deflective

Operator, and Racker. AR 32. The ALJ thus found that Plaintiff was not disabled under the Act.

AR 33.

## DISCUSSION

Plaintiff argues that the ALJ made three errors. First, Plaintiff argues that the ALJ

improperly rejected Plaintiff's subjective symptom testimony. Second, Plaintiff argues that the

ALJ improperly rejected the medical opinion of Dr. Kasey Gregory, Plaintiff's treating

physician. Finally, Plaintiff argues that the ALJ failed to incorporate all medical findings into

Plaintiff's RFC. The Court addresses each alleged error in turn.

### A. Plaintiff's Subjective Symptom Testimony

Plaintiff argues that the ALJ improperly rejected Plaintiff's subjective symptom

testimony. At a hearing before the ALJ, Plaintiff testified that she suffered brain strokes that

caused her to have trouble walking, sitting, standing, lying down, and sleeping. AR 57. Plaintiff

explained that her brain strokes cause her vertigo, nausea, vomiting, and dizziness. Plaintiff also

described pain and numbness in her back, right leg, and both arms. AR 58. Plaintiff often limps.

*Id.* Additionally, Plaintiff suffers severe migraines. Plaintiff estimated that the migraines caused

her to miss work five times during a three-month period. AR 59-60. Finally, Plaintiff testified

that she suffers from "severe anxiety." AR 61. In her DIB application, Plaintiff wrote that she

was "totally disabled from performing any substantial gainful activity due to [her] symptoms and

restrictions resulting from the diagnosis of: Vertigo, Cervical Surgery, Stomach Surgery, Spinal Surgery, and Hearing Surgery." AR 188.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 29. The ALJ specified three reasons for rejecting Plaintiff's symptom testimony: (1) Plaintiff's "conservative course of treatment" conflicted with the alleged severity of Plaintiff's symptoms; (2) Plaintiff's activities of daily living conflicted with the alleged severity of Plaintiff's symptoms; and (3) the objective medical evidence did "not support the severity of [Plaintiff's] symptoms." AR 29-30.

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[2] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

has alleged; she need only show that it could reasonably have caused some degree of the

symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the

ALJ can reject the claimant's testimony about the severity of her symptoms only by offering

specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting

*Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must

state which pain testimony is not credible and what evidence suggests the complaints are not

credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be

"sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing

*Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's

character," and requires the ALJ to consider all of the evidence in an individual's record when

evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016

WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case

record, including the objective medical evidence; an individual's statements about the intensity,

persistence, and limiting effects of symptoms; statements and other information provided by

medical sources and other persons; and any other relevant evidence in the individual's case

record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's

statements made to the Commissioner, medical providers, and others regarding the claimant's

location, frequency and duration of symptoms, the impact of the symptoms on daily living

activities, factors that precipitate and aggravate symptoms, medications and treatments used, and

other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical

reports regarding the claimant's history, treatment, responses to treatment, prior work record,

efforts to work, daily activities, and other information concerning the intensity, persistence, and

limiting effects of an individual's symptoms; and (3) non-medical source statements, considering

how consistent those statements are with the claimant's statements about his or her symptoms

and other evidence in the file. *See id.* at \*6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall

even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See*

*Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the

claimant's symptom testimony "is not substantiated affirmatively by objective medical

evidence." *Robbins*, 466 F.3d at 883.

The ALJ was required to specifically identify what evidence contradicted what

testimony. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th

Cir. 2014) (stating that an ALJ may not vaguely conclude that "a claimant's testimony is 'not

consistent with the objective medical evidence,' without any 'specific findings in support' of that

conclusion" (quoting *Vasquez*, 572 F.3d at 592). "[A]n ALJ does not provide specific, clear, and

convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence

in support of his or her residual functional capacity determination" but must "specify which

testimony she finds not credible," and the district court may not "comb the administrative record

to find specific conflicts." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015) (quoting

*Burrell v. Colvin*, 775 F.3d 1133, 1139 (9th Cir. 2014)); *see also Smolen*, 80 F.3d at 1284 ("The

ALJ must state specifically which symptom testimony is not credible and what facts in the record

lead to that conclusion."); *Dodrill*, 12 F.3d at 918 (holding that it is "not sufficient for the ALJ to

make only general findings; he must state which pain testimony is not credible and what

evidence suggests the complaints are not credible"); *Nan B. v. Saul*, 2020 WL 6636221, at \*6 (D.

Or. Nov. 12, 2020) (finding that the ALJ's summary of the medical record, statement that the

claimant's testimony "was not entirely consistent with the medical evidence and other evidence

'for the reasons explained in this decision,'" and failure to "discuss which testimony about what

limitations he is crediting or discrediting, and why" was legal error). Instead, the ALJ must

"identify the testimony she found not credible" and "link that testimony to the particular parts of

the record supporting her non-credibility determination." *Brown-Hunter*, 806 F.3d at 494. Failure

to do so is legal error. *Id.*

### a.  Conservative Course of Treatment

The ALJ found that Plaintiff "has not generally received the type of medical treatment

one would expect for a totally disabled individual." AR 30. The ALJ noted that Plaintiff's

treatment "consist[ed] of largely over-the-counter medication and occasionally prescription

medicine." *Id.* Routine, conservative treatment can be sufficient to discount a claimant's

subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481

F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the

inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti v.

Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The amount of treatment is "an important indicator

of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. §§ 404.1529(c)(3);

416.929(c)(3). If, however, the claimant has a good reason for not seeking more aggressive

treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective

symptoms. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

Here, substantial evidence does not support the ALJ's finding that Plaintiff's treatment

history is "conservative." Plaintiff has undergone cervical surgery to treat her pain. *See* AR 30,

283. Surgery is generally not a conservative course of treatment. *See Cagle v. Colvin*, 2016

WL 3912950, at *8 (E.D. Cal. July 20, 2016) (finding that an ALJ erred in concluding that a

plaintiff who underwent invasive surgery to treat back pain had engaged in a conservative course

of treatment). Additionally, the ALJ herself noted that Plaintiff has "tried multiple treatment

modalities including physical therapy, nitroglycerine, anti-inflammatories, nerve relaxers,

steroids, and muscle relaxers, as well as over-the-counter and prescription paid medication."

AR 30. Thus, the ALJ erred when she discounted Plaintiff's symptom testimony because of

Plaintiff's treatment history.

### b. Activities of Daily Living

The ALJ discounted Plaintiff's symptom testimony in part because the ALJ believed that

Plaintiff's "alleged limitations are not fully supported by her reported activities." AR 30. The

ALJ highlighted that Plaintiff "indicated she could perform adequate self-care, prepare simple

meals, do household chores, handle her finances, and go out to the store." *Id.*[3] More importantly,

the ALJ emphasized that Plaintiff "engaged in work activity after the alleged onset date." *Id.*

Daily living activities may provide a basis for discounting subjective symptoms if the

plaintiff's activities either contradict his or her testimony or meet the threshold for transferable

work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn*, 495 F.3d at 639.

For daily activities to discount subjective symptom testimony, the activities do not need to be

equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a

totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be

---

[3] Unlike Plaintiff's work activity, these activities do not refute Plaintiff's symptom testimony. Although, "[e]ngaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination," *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014), "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

utterly incapacitated to receive disability benefits, and completion of certain routine activities is

insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a

"claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks

omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be

'utterly incapacitated' in order to be disabled."). The Ninth Circuit "has repeatedly asserted that

the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping,

driving a car, or limited walking for exercise, does not in any way detract from her credibility as

to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also*

*Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be

inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and

noting that "disability claimants should not be penalized for attempting to lead normal lives in

the face of their limitations"). Moreover, particularly with certain conditions, cycles of

improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated

instances of improvement over a period of months or years and to treat them as a basis for

concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017

(9th Cir. 2014).

Substantial evidence supports the ALJ's finding that Plaintiff's testimony about her

activities of daily living contradict Plaintiff's claim that she is totally disabled. Plaintiff was

working "roughly around 32 to 35" hours per week at Walmart at the time of her hearing. AR 46.

In that job, Plaintiff testified standing between five and six hours at a time. AR 62. On at least

one occasion during her employment at Walmart Plaintiff worked a 40-hour week. *Id.* Nor was

that Plaintiff's only work after her alleged onset date. Plaintiff waitressed at three restaurants

"three or four days a week" in 2018. AR 47. Indeed, after her alleged onset date, Plaintiff even

spent three months trying to open and operate an antique store. AR 64. Plaintiff's ability to work

multiple jobs, some nearly full time, and some that require extensive standing contradict

Plaintiff's testimony that she is totally disabled.

Plaintiff testified that she experienced pain and other difficulties during these jobs. *See*

AR 62 ("I get an hour lunch and two 15-minute breaks and I'm just—I collapse on those times,

I'm literally taking probably my does of Ibuprofen to help with my pain to get me through my

shifts because I have to pay my bills, I don't have a choice."). "Even where [a plaintiff's]

activities suggest some difficulty functioning," however, "they may be grounds for discrediting

the claimant's testimony to the extent that they contradict claims of a totally debilitating

impairment." *Molina*, 674 F.3d at 1113. Moreover, to the extent that Plaintiff's difficulties in

those jobs support a different finding than the ALJ's, the substantial evidence standard requires

the Court to defer to the ALJ's findings. *Burch*, 400 F.3d at 680-81. Because substantial

evidence supports the ALJ's finding that Plaintiff's activities of daily living conflict with

Plaintiff's testimony about her own limitations, the ALJ did not err by discounting Plaintiff's

symptom testimony.

### c.  Objective Medical Evidence

Finally, the ALJ found that "[t]he medical record does not support the severity of the

claimant's symptoms." AR 29. An ALJ may consider the lack of corroborating objective medical

evidence as one factor in "determining the severity of the claimant's pain." *Rollins*, 261

F.3d at 857. The ALJ may not, however, reject subjective testimony solely because it was not

fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883; *see also* 20 C.F.R.

§ 404.1529(c)(2) (noting that the Commissioner "will not reject your statements about the

intensity and persistence of your pain or other symptoms or about the effect your symptoms have

on your ability to work solely because the available objective medical evidence does not

substantiate your statements").

The ALJ properly discounted Plaintiff's symptom testimony based, in part, on the

objective medical evidence. An ALJ may *consider* the lack of corroborating objective medical

evidence as one factor in "determining the severity of the claimant's pain." *Rollinsi*, 261

F.3d at 857. Substantial evidence supports the ALJ's conclusion that the objective medical

evidence does not support Plaintiff's symptom testimony. Because the ALJ had other valid

reasons for discounting Plaintiff's symptom testimony, the ALJ properly considered that the

objective medical evidence did not support Plaintiff's symptom testimony when evaluating

Plaintiff's symptom testimony

## B.  Medical Opinion of Dr. Gregory

Plaintiff also argues that the ALJ erred by assigning "[n]o weight" to the opinion of

Dr. Gregory, Plaintiff's treating physician. Dr. Gregory, in a medical source statement completed

on June 8, 2017 after Plaintiff's third visit with Dr. Gregory, opined that Plaintiff could sit or

stand for no more than two hours at a time, could only occasionally lift 10 pounds, that

Plaintiff's "anxiety issues" rendered Plaintiff capable only of low stress jobs, and that Plaintiff

would likely be absent from work four days a month because of her impairments. *See* AR 336-

339. The ALJ rejected Dr. Gregory's opinion, which was contradicted by the opinions of state

agency medical consultants, because Dr. Gregory "had only seen the claimant for treatment a

total of three times and the extreme restrictions she provided are inconsistent with the more

recent evidence of record, and the claimant's reported work activities, as well as her reported

activities of daily living." AR 30.

The ALJ is responsible for resolving conflicts in the medical record, including conflicts

among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit and the

PAGE 14 – OPINION AND ORDER

Commissioner[4] distinguish between the opinions of three types of physicians: treating

physicians, examining physicians, and non-examining physicians. *Garrison*, 759 F.3d at 1012.

Generally, "a treating physician's opinion carries more weight than an examining physician's,

and an examining physician's opinion carries more weight than a reviewing physician's."

*Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *see also* 20 C.F.R.

§§ 404.1527(c)(1), (2); 416.927(c)(1), (2). If a treating physician's opinion is supported by

medically acceptable techniques and is not inconsistent with other substantial evidence in the

record, a court gives the treating physician's opinion controlling weight. *Holohan*, 246 F.3d

at 1202; see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). A court may reject a treating

doctor's uncontradicted opinion only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc.*

*Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If the opinion of another physician contradicts a

treating doctor's opinion, the ALJ must provide "specific and legitimate reasons" for discrediting

the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining

physician than that of a non-examining physician. *Orn*, 495 F.3d at 631; *see also* 20 C.F.R.

§§ 404.1527(c)(1), 416.927(c)(1). As is the case with the opinion of a treating physician, the ALJ

must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an

examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of

another physician contradicts the opinion of an examining physician, the ALJ must provide

"specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v.*

*Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating

---

[4] Because Plaintiff filed [her] [his] application before March 17, 2017, the application is governed by 20 C.F.R. §§ 404.1527 and 416.927, and the revised rules relating to the consideration of medical opinion testimony do not apply.

physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific,

legitimate reasons for doing so, and those reasons are supported by substantial record evidence."

*Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance

on a claimant's discredited subjective complaints, inconsistency with medical records,

inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or

that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554

F.3d at 1228; *Tommasetti*, 533 F.3d at 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An

ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing

more than ignoring it, asserting without explanation that another medical opinion is more

persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for

the ALJ's conclusion. *Garrison*¸ 759 F.3d at 1013; *see also Smolen*, 80 F.3d at 1286 (noting that

an ALJ effectively rejects an opinion when he or she ignores it).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and

thorough summary of the facts and conflicting clinical evidence, stating his interpretation

thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). In

other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own

interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d

at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). "[T]he opinion of a non-

examining medical advisor cannot by itself constitute substantial evidence that justifies the

rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec.

Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted); *but see id.* at 600 (opinions of

non-treating or nonexamining physicians may serve as substantial evidence when the opinions

are consistent with independent clinical findings or other evidence in the record).

The ALJ did not err by rejecting of Dr. Gregory's opinion. Because the state agency

medical consultants' opinions contradict Dr. Gregory's opinion, *compare* AR 78 (state agency

medical consultant Dr. William Nisbet opining that Plaintiff can stand, sit, and walk for six hours

and can lift 20 pounds occasionally and 10 pounds frequently) and AR 92-93 (state agency

medical consultant Dr. Martin Kehrli opining the same) *with* AR 337 (Dr. Gregory opining that

Plaintiff can stand, walk, and sit for no more than two hours and can lift no more than 10

pounds), the ALJ needed only to provide "specific and legitimate reasons" for discrediting

Dr. Gregory's opinion. *Ryan*, 528 F.3d at 1198.

The ALJ provided several reasons for rejecting the "extreme restrictions" in

Dr. Gregory's opinion: those restrictions conflicted with (1) "more recent evidence of record,"

(2) Plaintiff's "reported work activities," and (3) Plaintiff's activities of daily living. These are

permissible reasons to reject the contradicted opinion of a treating physician. *See Morgan*, 169

F.3d at 601. The Court finds that substantial supports at least the ALJ's finding that

Dr. Gregory's opinion conflicts with Plaintiff's reported work activities. Dr. Gregory opined that

Plaintiff could not sit, stand, or walk for more than two hours. AR 337. In 2018, however,

Plaintiff was working a job at Walmart that required her to stand for five-to-six hours. Similarly,

Dr. Gregory opined that Plaintiff would miss four days per month because of her impairments.

AR 338. Plaintiff, however, testified that she had missed only five days during her three-month

tenure at Walmart. Because an inconsistency between a plaintiff's work activities and a

contradicted opinion of a treating physician supports rejecting that physician's opinion and

substantial evidence supports the ALJ's finding that Plaintiff's work activities conflict with

Dr. Gregory's opinion, the ALJ did not err by rejecting Dr. Gregory's opinion.

## C.  Plaintiff's RFC

Finally, Plaintiff argues that the ALJ failed to incorporate all medical findings into

Plaintiff's RFC. The ALJ determined Plaintiff's RFC and found that Plaintiff could perform:

> Light work as defined in 20 C.F.R. [§] 404.1567(b) except she can
> engage in occasional climbing of ramps and stairs, but never
> climbing of ladders, ropes and scaffolds. She can frequently stoop,
> kneel, crouch, and crawl. Due to pain and side effects of
> medication, she can understand, remember, and carry out only
> simple routine and repetitive tasks with only occasional public
> contact.

AR 28. The RFC represents the most that a claimant can do despite his or her physical or mental

impairments. 20 C.F.R. § 404.1545. In formulating the RFC, the ALJ must consider all

medically determinable impairments, including those that are not "severe," and evaluate "all of

the relevant medical and other evidence." *Id.* In determining a claimant's RFC and posing

corresponding hypothetical questions to the VE, the ALJ must resolve conflicts in the medical

testimony and translate the claimant's impairments into concrete functional limitations. *Stubbs-*

*Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

First, Plaintiff appears to argue that the ALJ failed to include in the RFC any limitations

related to Plaintiff's impaired ability to concentrate or interact with other people. That is

incorrect. The RFC specifically states that "[d]ue to pain and side effects of medication,

[Plaintiff] can understand, remember, and carry out only simple routine and repetitive tasks with

only occasional public contact." AR 28. Plaintiff does not explain what additional limitations the

ALJ should have included in the RFC for Plaintiff's impaired ability to concentrate or interact

with others.

PAGE 18 – OPINION AND ORDER

Second, Plaintiff argues that the ALJ's RFC did not limit Plaintiff's ability to lift heavy objects, despite evidence in the record showing that Plaintiff's pain was exacerbated by lifting heavy objects. Again, this is incorrect. The RFC limits Plaintiff to light work. The regulations define light work "as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." SSR 83-10. Because both state agency medical consultants opined that Plaintiff can occasionally lift 20 pounds and frequently lift 10 pounds, *see* AR 78, 92-93, *available at* 1983 WL 31251, at *5 (Jan. 1, 1983), substantial evidence supports this limitation.

Finally, Plaintiff argues that the ALJ should have included that Plaintiff requires additional breaks during work in the RFC. The only evidence Plaintiff marshals in support of her argument that additional breaks are necessary, however, is her own properly discredited testimony and the discredited testimony of Dr. Gregory. Because the Court finds that the ALJ's properly discredited the testimony of Plaintiff and Dr. Gregory, the Court affirms the ALJ's RFC determination.

**CONCLUSION**

The Court AFFIRMS the Commissioner's decision that Plaintiff was not disabled.

**IT IS SO ORDERED**.

DATED this 18th day of August, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge
